**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| IN RE: § <br> § <br> BULLIONDIRECT, INC. § <br> a/k/a BD, BDI AND B DIRECT, INC., § <br> § <br> DEBTOR. § <br> § | CHAPTER 11 <br><br> CASE NO. 15-10940-tmd |

**FIRST OMNIBUS OBJECTION TO CLAIMS BY TRUSTEE (WRONG AMOUNT, NOT SECURED, NO PRIORITY, DUPLICATE, LATE-FILED, AND/OR UNLIQUIDATED CLAIMS)**

**This pleading requests relief that may be adverse to your interests.**

**If no timely response is filed by August 24, 2018, the relief requested herein may be granted without a hearing being held.**

**A timely filed response is necessary for a hearing to be held.**

Gregory S. Milligan, as Trustee (the "Trustee") of the BullionDirect, Inc. Litigation Trust, hereby files this *Objection* to various claims filed with the Bankruptcy Court in the above-captioned bankruptcy case.

**I. INTRODUCTION**

1. This Objection seeks to ensure that all customers and other creditors of BullionDirect, Inc. ("BDI") receive fair, equal, and just treatment. Certain customers of BDI have filed proofs of claim in the BDI bankruptcy case with this Court that appear to be incorrect (the "Disputed Claims"). With this Objection, the Trustee asks the Bankruptcy Court to adjust these Disputed Claims to provide these creditors and all of BDI's other victims with fair and equal treatment.

2. **Claimants receiving this Objection should find their name on *Exhibit A*,** which is arranged alphabetically by last name, and which lists all Disputed Claims, states the

grounds for the Trustee's objection to each specific claim, and states the treatment that the Trustee proposes for each Disputed Claim.[1] The Trustee proposes treating all creditors asserting Disputed Claims the same as all general unsecured creditors who did not file separate proofs of claim.

3. As discussed in more detail below, the Trustee is asserting the following types of objections to various Disputed Claims. Only certain objections will apply to each Disputed Claim:

(a) "Wrong Amount": the Disputed Claim appears to assert the wrong amount, based on the schedules of liabilities filed in the bankruptcy case;

(b) "Not Secured": the Disputed Claim appears to assert a secured claim that is not supported by applicable law;

(c) "No Priority": he Disputed Claim appears to assert a priority claim that is not supported by applicable law and is not fair to other creditors;

(d) "Duplicate": the Disputed Claim appears to be a duplicate of a different proof of claim filed by the same creditor; and

(e) "Late-Filed": the Disputed Claim was not filed by the deadline for filing proofs of claim as set by the Court;

(f) "Unliquidated": the Disputed Claim appears to assert no definite dollar amount.

## II. BACKGROUND

4. This bankruptcy case was filed on July 20, 2015 (the "Petition Date"). At the time of the bankruptcy filing, BDI's balance sheet reflected approximately $25 million owed to more than 5,000 customers, yet BDI had assets on hand worth less than $1 million. In January 2018, the founder and President of BDI, Charles H. McAllister, was charged by the United States

---

[1] This Objection is being delivered to all creditors who filed Disputed Claims. Each claimant asserting a Disputed Claim is also receiving a simple cover letter in the form attached hereto as *Exhibit B*. The website for the BullionDirect, Inc. Litigation Trust identified in this cover letter will be available beginning July 20, 2018.

Department of Justice with felony wire fraud and money laundering in a separate criminal case in the United States District Court for the Western District of Texas.

5. Meanwhile, in this bankruptcy case, the Bankruptcy Court confirmed a chapter 11 plan (the "Plan") in July 2016 that transferred the remaining assets of BDI to the BullionDirect, Inc. Litigation Trust (the "Trust") and appointed the Trustee to manage this Trust.[2] The Trustee has been collecting and selling the Trust's tangible assets, such as precious metals and promissory notes. The Trustee also investigated the Trust's intangible assets, including litigation claims against individuals and companies involved with BDI, and monetized those assets through settlement where appropriate.[3]

6. The Trust now has cash in excess of $700,000.[4] The Trustee believes that distributions to allowed creditors of all cash in excess of the required administrative expense reserve should commence pursuant to the Plan and the agreement governing the Trust after claims are properly reconciled.

7. More than 500 proofs of claim were filed with the Bankruptcy Court in this bankruptcy case. Various professionals involved in this bankruptcy case have reviewed and analyzed these claims. Based on that review, the Trustee has identified 140 Disputed Claims that should be adjusted to ensure fair and equal treatment for all of the victims and other creditors of BDI. This Objection seeks to adjust those claims. Without adjusting these Disputed Claims, certain victims will receive more than their fair share at the expense of other victims. The Trustee believes this is not fair and accordingly has filed this Objection.

---

[2] *See* Order Confirming the Debtor's Chapter 11 Plan of Reorganization, entered July 26, 2016, Docket No. 209.

[3] *See* Investigation Report, filed January 26, 2018, Docket No. 285.

[4] *See* Chapter 11 Post-Confirmation Report for the Quarter Ending March 31, 2018, filed April 19, 2018, Docket No. 287.

8.      In support of this Objection, the Trustee is submitting the *Declaration* attached hereto as **Exhibit C**.

### III. OBJECTIONS

9.      Under the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, the Disputed Claims are "deemed allowed" unless objected to. 11 U.S.C. § 502(a). Upon objection, the Bankruptcy Court determines the amount and status of the Disputed Claim as of the Petition Date. *Id*. § 502(b).[5] Holders of Disputed Claims are to be provided with notice and an opportunity for a hearing in front of the Bankruptcy Court prior to the Bankruptcy Court making this determination. *Id*. The Trustee has provided notice of this Objection and opportunity for a hearing to all persons asserting Disputed Claims by serving this Objection on all such persons. The instructions for obtaining a hearing on this Objection are at the beginning of this Objection. The grounds for each category of objection are discussed below.

   a.   **"Wrong Amount" Objection**

10.     The "Wrong Amount" Objection disputes the dollar amount asserted in the applicable Disputed Claims. Under the Bankruptcy Code, claims in bankruptcy cases are to be determined "in lawful currency of the United States as of the date of the filing of the petition." 11 U.S.C. § 502(b). The Trustee therefore believes that the monetary claims of BDI customers in this bankruptcy case for precious metals owed to them by BDI should be calculated based on (a) the amount by weight of the precious metals owed by BDI to those customers, multiplied by (b) the prevailing United States market prices by weight for those precious metals (known as

---

[5] The Bankruptcy Court has jurisdiction to consider the Objection pursuant to 28 U.S.C. §§ 157 and 1334. Objections to claims are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(B). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The authority for the relief requested herein is § 502(b) of the Bankruptcy Code and Rule 3007 of the Federal Rules of Bankruptcy Procedure. Further, the Plan specifically retains jurisdiction for the Court to determine the Objection. *See* Plan art. IX(c), (g), & (l).

"spot prices") as of filing of the BDI chapter 11 bankruptcy petition on the Petition Date on July 20, 2015.[6]

11. The Trustee believes that the *Amended Schedule F*, filed in this bankruptcy case on September 18, 2015, Docket No. 249, correctly lists the amounts owed by BDI to victims based on the value of the precious metals due to each victim and the current market prices for those metals as of the July 20, 2015 Petition Date plus any cash owed to those victims by BDI. The spot prices used in *Amended Schedule F* are:[7]

| Type of Metal | Price Per Ounce as of July 20, 2015 Petition Date |
|---|---|
| Gold | $1,103.60 per ounce |
| Silver | $14.76 per ounce |
| Platinum | $974.00 per ounce |
| Palladium | $603.00 per ounce |
| Copper | $0.50 per ounce |

The Trustee believes these prices are the appropriate common multipliers that should be used to calculate all creditor claims for undelivered precious metals.

*12.* The Trustee accordingly believes that all Disputed Claims should be adjusted to the amounts reflected in this *Amended Schedule F*. These amounts are reflected in ***Exhibit A*** for each applicable Disputed Claim. The Trustee notes that applying the same methodology for calculating claims equally to all claimants ensures fair and equal treatment for all claimants. The Trustee asks the Bankruptcy Court to reduce these Disputed Claims as proposed in ***Exhibit A***.

---

[6] *See, e.g.,* Restat. 2d of Contracts, § 347 (2nd 1981) (stating that a party injured by a breach of contract "has a right to damages based on his expectation interest as measured by (a) the loss in the value to him of the other party's performance caused by its failure or deficiency, plus (b) any other loss, including incidental or consequential loss, caused by the breach, less (c) any cost or other loss that he has avoided by not having to perform").

[7] *See* Amended Schedule F, pg. 255.

b.  **"Not Secured" Objection**

13.  The "Not Secured" Objection disputes the secured status asserted in the applicable Disputed Claims.  There are no secured creditors in the BDI bankruptcy case and all creditors are unsecured.  BDI did not grant any security interests in its assets to creditors and no creditors perfected any security interests in any assets of BDI.  Further, no assets in BDI's possession could be traced to any particular creditor so no creditors established ownership of any assets formerly held by BDI.  The Plan therefore transferred all assets to the Trust free and clear of any claims of security interests or ownership, and the Plan does not provide for any special treatment of secured claims.[8]  The Trustee accordingly asks the Bankruptcy Court to change the status of these priority Disputed Claims to General Unsecured Claims along with all other victim claims as proposed in *Exhibit A*.

c.  **"No Priority" Objection**

14.  The "No Priority" Objection disputes the priority status asserted in the applicable Disputed Claims.  Priority claims get paid ahead of other creditors, resulting in lower payments to other creditors and unequal treatment between similarly situation BDI victims and other creditors.  The Trustee believes that all BDI victims should receive equal treatment and accordingly seeks disallowance of all priority Disputed Claims and reclassification of those claims to General Unsecured Claims.[9]

15.  Further, none of the priority provisions of § 507 of the Bankruptcy Code support theses claimants' assertions of priority status.  While some Disputed Claims do assert priority status under other subsections of § 507, the vast majority assert priority status under § 507(a)(7) of the Bankruptcy Code, which only applies to claims "arising from the deposit, before the

---

[8] *See* Plan, arts. V & VI.

[9] "General Unsecured Claims" are defined and treated as class 5 claims under the Plan. *See* Plan, art. VI.

commencement of the case, of money in connection with the purchase, lease, or rental of property, or the purchase of services, for the personal, family, or household use of such individuals, that were not delivered or provided." 11 U.S.C. § 507(a)(7). The Trustee does not believe that precious metals or cash are property for "personal, family, or household use" within the meaning of § 507(a)(7) of the Bankruptcy Code. The Trustee accordingly asks the Bankruptcy Court to change the status of these priority Disputed Claims to General Unsecured Claims along with all other victim claims as proposed in *Exhibit A*.

      d.      **"Duplicate" Objection**

16.      The "Duplicate" objection asks the Bankruptcy Court to determine the proper claim in situations where the same claimant filed more than one proof of claim was filed with the Bankruptcy Court. The Trustee accordingly believes that all duplicate Disputed Claims should be treated as one general unsecured claim per claimant and allowed in the amounts stated in the *Amended Schedule F*, which are reflected in *Exhibit A* for each applicable duplicate Disputed Claim. The Trustee accordingly asks the Bankruptcy Court to determine these duplicate Disputed Claims as proposed in *Exhibit A*.

      e.      **"Late-Filed" Objection**

17.      The Bankruptcy Court ordered that proofs of claim must be filed by November 23, 2015.[10] Late-filed proofs of claim are not allowed under the Plan.[11] The Trustee accordingly believes that all late-filed Disputed Claims should be allowed in the amounts due to that claimant as reflected in the *Amended Schedule F*. These amounts are reflected in *Exhibit A* for each

---

[10] *Order Combined with Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadlines*, entered July 21, 2015, Docket No. 4.

[11] *Plan*, art. I, § 5.

7

applicable late-filed Disputed Claim. The Trustee accordingly asks the Bankruptcy Court to determine these late-filed Disputed Claims as proposed in *Exhibit A*.

### f. "Unliquidated" Objection

18. Certain proofs of claim were filed without stating an ascertainable, liquidated dollar amount. Bankruptcy law encourages proofs of claim to state a liquidated dollar amount.[12] The Trustee accordingly believes that all unliquidated Disputed Claims should be allowed in the amounts due to that claimant as reflected in the *Amended Schedule F*. These amounts are reflected in *Exhibit A* for each applicable unliquidated Disputed Claim. The Trustee accordingly asks the Bankruptcy Court to determine these unliquidated Disputed Claims as proposed in *Exhibit A*.

### IV. CONCLUSION

WHEREFORE, the Trustee respectfully requests that the Court enter an order in substantially the same form as the proposed order submitted with this Objection adjusting and finally determining the Disputed Claims as proposed in *Exhibit A* and granting such other and further relief as this Court deems just and proper under the circumstances.[13]

---

[12] *See* Fed. R. Bankr. P. 3001(a) (requiring claims to conform with the Official Form); Official Form B410 (instructing each claimant to state "how much" their claim is). Further, while the Trustee does not believe that any claims are "unliquidated" at this time, any truly unliquidated claims must be estimated for the purposes of allowance. 11 U.S.C. § 502(c)(1). Accordingly, in the alternative, to the extent any claims are truly unliquidated, the Trustee would ask the Court to estimate such claims for all purposes relating to this Case, including allowance and distribution, in the amounts listed on *Amended Schedule F*.

[13] The Trustee will be filing a separate certificate of service evidencing service of this Objection to all holders of Disputed Claims by United States mail, first-class, postage prepaid.

Respectfully submitted,

*/s/ Jesse T. Moore*
Jesse T. Moore
State Bar No. 24056001
Dykema Cox Smith
111 Congress Ave., Suite 1800
Austin, Texas 78701
Phone: 512-703-6325
Fax: 512-703-6399
Email: jmoore@dykema.com

***Counsel to Gregory S. Milligan, Trustee for the BullionDirect, Inc. Litigation Trust***